# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 6, 2024
Lyle W. Cayce
Clerk

No. 23-40085

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

versus

MIRIAM ALVAREZ; JUAN GONZALEZ-CARDEBAS,

*Defendants—Appellants,*

CONSOLIDATED WITH

No. 23-40156

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

versus

MOISES CAMPOS-ESPINOSA,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 3:18-CR-22-34,
3:18-CR-22-41

Before CLEMENT, GRAVES, and WILLETT, *Circuit Judges*.
PER CURIAM:[*]

Miriam Alvarez, Juan Gonzalez-Cardebas, and Moises Campos-Espinosa were among 56 defendants indicted for their roles in a large drug-trafficking and money-laundering operation carried out by the Guajardo Transnational Criminal Organization. After a two-week trial, all three were convicted on various charges. Each defendant now raises one discrete issue on appeal with respect to his/her conviction or sentence. We AFFIRM the convictions of Juan Gonzalez-Cardebas, AFFIRM the sentence of Miriam Alvarez, and VACATE one of the charges against Moises Campos-Espinosa and REMAND his case for resentencing.

I

In early 2016, law enforcement agencies opened an investigation into major drug-trafficking activity involving the Guajardo Transnational Criminal Organization based out of Mexico. The investigation lasted through April 2018 and resulted in law enforcement seizing 124 kilograms of cocaine, 3 kilograms of heroin, and over $4.6 million. The trafficking operation comprised six different distribution cells, each with its own customer base, stash house coordinators, and couriers. Each of the defendants in this appeal was involved with a different distribution cell.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

A

Juan Gonzalez-Cardebas was involved with the Peterson Cell. In September 2017, law enforcement learned about a drug delivery set to take place between Houston and Virginia, so they set up surveillance around an apartment complex in the Virginia Beach area where the delivery was expected to occur. On September 20, a Penske truck with three unidentified males inside arrived at that location. Law enforcement observed the men unload a piece of furniture and place it inside an apartment before departing. The piece of furniture was later found to have 18 kilograms of cocaine hidden inside of it. Although law enforcement did not originally know the identities of the three males, they were later revealed to be Defendant Gonzalez-Cardebas, along with Oscar Hernandez-Cervantes and Rolindo Hernandez.

At trial, Gonzalez-Cardebas did not deny delivering the furniture to the apartment but claimed that he didn't know it had drugs hidden inside. To counter that narrative, the government offered surveillance footage from the furniture delivery and several witnesses who testified that Gonzalez-Cardebas knew this was a drug delivery. Rene Pena, for example, testified that he was 95 percent sure that Gonzalez-Cardebas was the man he paid to transport the cocaine from his ranch in Texas to Virginia. Oscar Hernandez-Cervantes—one of the other occupants of the Penske truck—also testified that Gonzales-Cardebas orchestrated the delivery, thought to hide the cocaine in the furniture, got paid for the delivery, and received a call after the cocaine was seized.

The government also introduced a Spanish "corrido" (music video) and its accompanying Spanish to English transcript. Oscar testified that the corrido was likely made within a month of the drug delivery and that all three of the truck's occupants—including Gonzales-Cardebas—agreed to have the corrido made and laughed about it. He further testified that the corrido

explained how they transported the drugs. Gonzalez-Cardebas was convicted of conspiracy to possess with intent to distribute controlled substances and possession with intent to distribute cocaine and sentenced to 120 months' imprisonment.

B

Miriam Alvarez was involved with the Pena Cell. On July 1, 2017, Alvarez called Carlos Pena-Vargas, the leader of the Pena Cell, to set up a drug delivery. Alvarez identified herself as "Mia" and told Pena that "they told me to call you" to "arrange a time that is best for you." Pena then sent her the address of a gas station. At trial, Alvarez admitted to delivering 9 kilograms of cocaine to the gas station but claimed that she was forced to do so to "work[] out" a debt owed by her boyfriend to the drug traffickers. Notwithstanding her duress defense, the jury convicted Alvarez of conspiracy to possess with intent to distribute controlled substances and possession with intent to distribute cocaine.

The presentence report for Alvarez calculated her total offense level as 28 with an advisory Sentencing Guidelines range of 78–97 months' imprisonment. However, because U.S.S.G. § 5G1.1(b) imposes a statutorily mandated minimum of 120 months, that became her recommended Guidelines sentence. Both before sentencing, in writing, and then again during sentencing, through counsel, Alvarez confirmed that she had no objections to the presentence report, including the recommended 120-month sentence. The district court adopted the report and sentenced Alvarez to 120 months' imprisonment.

C

Moises Campos-Espinosa was involved with the Yorkie Cell. The government put on evidence that members of that cell helped Campos-Espinosa buy a truck and paid to have a hidden compartment installed in it.

4

Campos-Espinosa would then use this truck to transport cocaine from Houston to Miami and return with the profits. Law enforcement described two specific incidents in which Campos-Espinosa transported cocaine to Miami: one occurring in mid-February 2017, and one in early March that same year. The jury convicted Campos-Espinosa of one count of conspiracy to possess with intent to distribute controlled substances, one count of conspiracy to commit international money laundering by concealment, and two counts of possession with intent to distribute a controlled substance. He was sentenced to 151 months' imprisonment.

## II

Each defendant raises one issue on appeal. Gonzalez-Cardebas contends that his convictions should be overturned because the district court erred in admitting the corrido music video and its transcript. According to him, that evidence was prejudicial and hearsay. Alvarez claims that her case should be remanded for resentencing because the district court failed to apply the safety valve provision of the Guidelines to her recommended sentence. Campos-Espinosa challenges his conviction for money laundering, arguing that the evidence at trial was insufficient to support a conviction for that offense.

We review preserved objections to a district court's evidentiary rulings for abuse of discretion, subject to a harmless-error analysis. *United States v. King*, 93 F.4th 845, 850 (5th Cir. 2024). Objections that were not preserved are reviewed for plain error. *United States v. Shows Urquidi*, 71 F.4th 357, 372 (5th Cir. 2023). Similarly, we review preserved objections to a district court's factual findings at sentencing for clear error, while unpreserved objections are reviewed only for plain error. *United States v. Martinez-Rodriguez*, 821 F.3d 659, 662–63 (5th Cir. 2016). Finally, we review preserved sufficiency of the evidence challenges de novo and in the light most

favorable to the verdict. *United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018).

## III

### A

We begin with Gonzalez-Cardebas's challenge to the district court's admission of the corrido music video and accompanying transcript. Gonzalez-Cardebas argues that the corrido should not have been admitted for two reasons: (1) it was unduly prejudicial under Federal Rule of Evidence 403, and (2) it was inadmissible hearsay. Neither argument succeeds.

Because Gonzalez-Cardebas preserved his Rule 403 challenge, we review for abuse of discretion. Under Rule 403, a court may exclude evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Invoking Rule 403 "is an extraordinary measure because it permits a trial court to exclude concededly probative evidence, and thus it should be used sparingly." *Shows Urquidi*, 71 F.4th at 372. Moreover, even when a Rule 403 challenge is preserved, we give an "especially high level of deference to the district court, with reversal called for only rarely and only when there has been a clear abuse of discretion." *United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021). "Rare is the appellant who can make that showing." *Shows Urquidi*, 71 F.4th at 372.

Gonzalez-Cardebas argues that the corrido was prejudicial because he did not make or perform in the video, it was not determined when the corrido was made, the lyrics were unclear, and the quality was poor. Those arguments are all undermined by the record. Evidence suggested that Gonzalez-Cardebas agreed to have the corrido made, including the direct testimony of Oscar and the fact that Gonzalez-Cardebas appeared in the

video twice. Oscar also testified that the corrido was likely made within a month of the trip. And contrary to Gonzalez-Cardebas's assertion about the video's clarity, a trained DEA linguist testified that the transcript was a true and accurate transcript of the video. Accordingly, we are unpersuaded that the admission of the corrido or its transcript presented any danger of unfair prejudice.

Gonzalez-Cardebas cites our decision in *Sims* to support his argument. But the explicit rap video in that case was very different from the corrido at issue here; it referred to women as "bitches" and "whores," glorified the pimp lifestyle, and depicted violence and weapons. *Sims*, 11 F.4th at 323. The corrido does not contain any similarly prejudicial depictions. Moreover, even in *Sims* we held that "[g]iven the timing of this song, the lyrics that describe the facts of this case, and the fact that [the defendant] was in the video, we cannot say that the district court abused its discretion in admitting this video." *Id.* at 324. So too here. The corrido held plain probative value: it memorialized the trip to Virginia Beach, referenced the transportation of drugs, included two appearances by Gonzalez-Cardebas, and was generally corroborative of Oscar's testimony. Given this record, Gonzalez-Cardebas is not the "rare" appellant who has shown that the district court clearly abused its discretion in overruling his Rule 403 objection.

Gonzalez-Cardebas also argues that the corrido was hearsay but concedes that he did not preserve this objection, so our review is for plain error. According to Gonzalez-Cardebas, because the artist who wrote and performed in the video did not testify, the video contains out-of-court statements being offered for the truth of the matter. The government counters that the statements in the corrido were adopted both by Oscar, who testified at trial and was subject to cross-examination, and by Gonzalez-Cardebas himself. We need not resolve that dispute because even assuming

23-40085
c/w No. 23-40156

that the corrido was hearsay, any error in admitting it was harmless. *See United States v. Hankton*, 51 F.4th 578, 601 (5th Cir. 2022).

An error is harmless if there is no reasonable probability that the improperly admitted evidence contributed to the conviction. *United States v. Portillo*, 969 F.3d 144, 171 (5th Cir. 2020). The corrido occupied a very small portion of the government's case and was not referenced in closing argument. Moreover, the government offered significant additional evidence supporting the convictions, including testimony of several witnesses directly incriminating Gonzalez-Cardebas and surveillance video showing Gonzalez-Cardebas acting suspiciously. The video, at most, "constituted only a small portion of an otherwise strong case" and "did not impact the defendant['s] substantial rights." *Portillo*, 969 F.3d at 171.

We therefore AFFIRM Juan Gonzalez-Cardebas's convictions.

B

Moving next to Miriam Alvarez. She seeks a remand for resentencing because the district court did not apply the Guidelines' safety valve provision to her sentence. The safety valve provision permits a court, under certain circumstances, to impose a sentence in accordance with the Guidelines' range without regard to any statutory minimum. *See United States v. Lima-Rivero*, 971 F.3d 518, 521 (5th Cir. 2020). Alvarez's Guidelines range was 78–97 months' imprisonment, but she received a 120-month recommendation and sentence due the statutory minimum. She argues that had the district court applied the safety valve, her recommended sentence would have been lower.

There are five criteria to qualify for the safety valve. The parties agree that Alvarez meets the first four, so only the fifth is at issue.[1] The fifth "tell-all" requirement states: "[n]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *United States v. Garcia-Gil*, 133 F. App'x 102, 109 (5th Cir. 2005) (per curiam) (quoting 18 U.S.C. § 3553(f)(5)). The defendant has the burden of establishing her eligibility under this requirement. *United States v. Adams*, 791 F. App'x 494, 495 (5th Cir. 2020) (per curiam). To counter a defendant's assertion that she truthfully provided all relevant information and evidence, the government must offer something more than simple "speculation" or "mere conjecture," but it need not necessarily show direct or concrete evidence of dishonesty. *Lima-Rivero*, 971 F.3d at 522.

Alvarez acknowledges that because she did not object to the presentence report or her sentence before the district court, our review is for plain error. Under that standard, Alvarez cannot succeed. It was Alvarez's burden to establish as a factual matter that she truthfully gave the government all relevant information. But absent any affirmative assertion by Alvarez that she did so, it is difficult to imagine how the district court could have sua sponte concluded that she was fully truthful and forthcoming. To the contrary, by explicitly agreeing with the 120-month sentence recommendation, Alvarez arguably conceded that she was ineligible for the

---

[1] The first four requirements are that the defendant: (1) does not have more than four criminal history points, a prior three-point offense, or a prior two-point violent offense, (2) did not use violence or possess a weapon in connection with the offense, (3) did not commit an offense that resulted in death or serious bodily injury to any person, and (4) was not the leader or supervisor of the offense and engaged in a continuing criminal enterprise. 18 U.S.C. § 3553(f)(1)-(4).

9

safety valve. *See United States v. Molina-Borrayo*, 569 F. App'x 232, 235 (5th Cir. 2014) (per curiam) (finding no plain error in failure to apply the safety valve because the defendant "offered no evidence to the district court that he had fully and truthfully debriefed" and "conceded before the district court that he could not carry his burden").

Moreover, while there is no direct Fifth Circuit precedent addressing a district court's failure to sua sponte apply the safety valve, several other circuits have held that it does not constitute plain error. *See Ramirez*, 783 F.3d at 693; *United States v. Thompson*, 794 F. App'x 285, 286 (4th Cir. 2020); *United States v. Patton*, 538 F. App'x 699, 705 (6th Cir. 2013). By contrast, Alvaerz has not identified a single case coming out the other way. The lack of Fifth Circuit precedent, combined with other circuits' holdings, confirms that there was no plain error. *See United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023) (per curiam) ("[A]ny error is not plain if 'this circuit's law remains unsettled and the other federal circuits have reached divergent conclusions.'") (quoting *United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007)); *see also United States v. Luera*, 770 F. App'x 708, 709 (5th Cir. 2019) (per curiam) ("We do not ordinarily find plain error if an issue has not been addressed by a controlling circuit or Supreme Court precedent.").

Yet even on the merits, Alvarez's argument falls short. Plain error requires, among other things, that the district court committed an error that was clear or obvious. *Puckett v. United States*, 556 U.S. 129, 135 (2009). But it is hardly clear and obvious that Alvarez truthfully provided to the government all relevant information concerning her conduct. In fact, there is ample evidence in the record suggesting that she did not. First, sections of her testimony were directly contradicted by other witnesses. Second, she was not forthcoming in her testimony as to the number of "drug drops" with which she was involved, nor did she provide details about any of those additional "drops." And third, her main defense at trial was that she

delivered the drugs under duress, but that story was rejected by the jury when it convicted her. Because there was more than simple "speculation" or "mere conjecture" to support a finding that Alvarez had been untruthful, *Lima-Rivero*, 971 F.3d at 522, the district court did not commit plain error by failing to apply the safety valve.

We therefore AFFIRM Miriam Alvarez's sentence.

C

Lastly, Moises Campos-Espinosa challenges his conviction of Count Two for conspiracy to commit international money laundering by concealment. He argues that the evidence at trial was insufficient to support a conviction for that offense.

To obtain a conviction for conspiracy to commit international money laundering by concealment, the government must show "(1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006). And to show money laundering, the government must prove that a defendant "(1) attempted to transport funds from the United States to [outside the United States], (2) knew that these funds 'represent[ed] the proceeds of some form of unlawful activity,' *e.g.*, drug trafficking, and (3) knew that 'such transportation' was designed to 'conceal or disguise the nature, the location, the source, the ownership, or the control' of the funds." *Cuellar v. United States*, 553 U.S. 550, 561 (2008) (citing 18 U.S.C. § 1956(a)(2)(B)(i)). The third element "requires proof that the purpose—not merely effect—of the transportation was to conceal or disguise a listed attribute." *Id.* at 567. Accordingly, transporting funds in a "secretive manner" is not enough to satisfy this third element if the purpose of the

transportation was merely "to compensate the leaders of the [drug] operation." *Id.* at 566–67.

Campos-Espinosa argues that while the government offered evidence that money was transported for the purpose of sharing profits among the conspirators and paying off debts, there was no evidence of any plan to conceal the source, nature, or other attributes of the money. The government agrees. It admits that the evidence was insufficient to support a conviction for this charge and concedes that Campos-Espinosa's conviction of Count Two should be vacated, and the case remanded for resentencing. We agree with the parties that even when viewed in the light most favorable to the government, the evidence was insufficient to support a conviction of Count Two.[2]

We therefore VACATE Campos-Espinosa's conviction of Count Two and REMAND the case for resentencing.

IV

For all the reasons discussed, we AFFIRM the convictions of Juan Gonzalez-Cardebas, AFFIRM the sentence of Miriam Alvarez, and VACATE Count Two against Moises Campos-Espinosa and REMAND his case for resentencing.

---

[2] Campos-Espinosa raises other sufficiency of evidence issues. For example, he argues that the government failed to show that money was secretly transported to Mexico or that Campos-Espinosa had the requisite mens rea. We need not address those additional arguments.